UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE DOLORES and
ODELIA DOLORES,

    Plaintiffs,

v.

Case No. 19-10413

HON. GEORGE CARAM STEEH

GENERAL R.V. CENTER, INC.,
U.S. BANK, N.A., FOREST
RIVER, INC., and
CORNERSTONE UNITED, INC.,

    Defendants.

_____/

OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DOC. 20)

Before the court is Defendants General RV Center, Inc., and U.S. Bank's motion for summary judgment. The court heard oral argument on June 4, 2019, and took the matter under advisement. For the reasons explained below, Defendants' motion is granted.

BACKGROUND FACTS

Plaintiffs George and Odelia Dolores allege that Defendant General RV Center, Inc., duped them into buying a defective recreational vehicle. On April 3, 2018, Plaintiffs visited the General RV Center in Orange Park, Florida. The complaint alleges that they had no intention of purchasing an

- 1 -

RV on that date. A salesman, Kevin Mills, showed them a 2018 Crossfit RV, which Plaintiffs contend was advertised for $87,000. Mills told Plaintiffs that the RV was marked down and could be purchased for $78,000. Plaintiffs test drove the RV; when they returned, Mills stated that he had made a mistake on the price and that it was $87,000.

According to the complaint, Mills pressured Plaintiffs into purchasing the RV that very day and told them that they needed a $17,000 down payment. Plaintiffs told Mills that they did not have the funds for a down payment, but said that they had a 2007 Winnebago with an outstanding loan and a 2006 Honda truck. Mills encouraged Plaintiffs to trade in both vehicles (which were their only vehicles) toward the cost of the Crossfit. Mills told Plaintiffs that General RV would give a $55,000 trade in credit if they agreed to purchase the Crossfit for $87,000 that day. Mills also told Plaintiffs that the Crossfit would be ready to be picked up the next day.

Plaintiffs signed a purchase agreement on April 3, 2018. *See* Doc. 20-1, Ex. 2. The complaint alleges that Plaintiffs were "under the impression" that they were purchasing a brand new "defect free" Crossfit for $87,000 with a $55,000 credit. Doc. 1 at ¶ 28. The purchase agreement reflected, however, a purchase price of $100,247. Doc. 20-1, Ex. 2.

After Plaintiffs signed the agreement, Mills informed them that they could not pick up the Crossfit on the next day because it had been recalled and General RV needed to make repairs. General RV contends that all factory recall repairs were subsequently performed. According to the complaint, Plaintiffs read the purchase agreement on April 5, 2018, and realized that General RV had "unknowingly changed and marked up the price of the Crossfit to $100,247." Doc. 1 at ¶¶ 40-41.

On April 17, 2018, Mills called and told Plaintiffs they could pick up the Crossfit. When Plaintiffs arrived at the dealership, they were advised that the Crossfit was not ready. Plaintiffs waited approximately eight hours at the dealership. Plaintiffs relinquished their trade-in vehicles and executed a new purchase agreement. Doc. 20-1, Ex. 4. Plaintiffs allege that before they signed the new purchase agreement, General RV represented that the purchase price was $87,000, they would receive a $55,000 credit for their trade-in vehicles, the Crossfit was safe, and the vehicle was fit for its intended purpose. Again, the new purchase agreement reflected a list price of $100,247. *Id.* Plaintiffs contend that they were rushed through the signing of the documents and did not have the opportunity to read them. Doc. 26-2 at ¶¶ 20-21.

Plaintiffs also signed a retail installment contract for the financing of the Crossfit, which was provided by Defendant U.S. Bank. Doc. 20-1, Ex. 10. Plaintiffs allege that the material terms of the installment contract were "covered" when they signed it. Doc. 1 at ¶ 50. Plaintiffs further allege that the installment contract does not disclose the existence of the trade-in vehicles, any net trade-in allowance, or down payment amount, and that it contains "charges for soft add-ons which were not disclosed to Plaintiffs prior to consummation." *Id.* at ¶ 54.

Plaintiffs state that they initially declined an extended service contract but the business manager falsely stated that they would need one to protect against the theft of the vehicle. Plaintiffs contend that they were fraudulently induced into purchasing the service contract from Defendant Cornerstone.

After taking possession of the Crossfit, Plaintiffs took a road trip. On May 5, 2018, the Crossfit began shaking when driven on the highway, due to tire defects. General RV refused to replace the tires. On June 5, 2018, the Crossfit's back window popped out and shattered while Plaintiffs were driving. Plaintiffs allege that the awning motor was inoperable, the refrigerator and freezer malfunctioned, the microwave oven overheated, and the kitchen countertop was defective. Plaintiffs also allege that holes

in the ceiling were covered up with scotch tape. On July 18, 2018, Mrs. Dolores's neck was injured after she was jerked and swiveled around in the Crossfit's unsecured passenger seat. Plaintiffs contend that the Crossfit is mechanically unsound and unsafe to drive.

Plaintiffs state that they called the corporate office of the manufacturer, Forest River, Inc., on May 11, 2018, and spoke to the service warranty manager, Gregory Legatt. Legatt informed Plaintiffs that the Crossfit had sat idle on the dealership lot for one year because of its recall status and mechanical problems. Legatt told Plaintiffs that the dealer should not have sold the Crossfit because of the outstanding recalls.

Plaintiffs filed their complaint on February 11, 2019, alleging the following causes of action: Count I, Motor Vehicle Sales Finance Act (against General RV and U.S. Bank); Count II, Motor Vehicle Installment Sales Contract Act (General RV and U.S. Bank); Count III, Magnuson-Moss Warranty Act (General RV and U.S. Bank); Count IV, Magnuson-Moss Warranty Act (Forest River); Count V, Michigan Consumer Protection Act (General RV and U.S. Bank); Count VI, Michigan Consumer Protection Act (Forest River); Count VII, misrepresentation (General RV and U.S. Bank); Count VIII, misrepresentation (General RV and Cornerstone); Count IX, statutory conversion (General RV and U.S. Bank); and Count X,

common law conversion (General RV and U.S. Bank). Plaintiffs have stipulated to the dismissal of Cornerstone and have agreed to withdraw Counts V (Michigan Consumer Protection Act), IX (statutory conversion), and X (common law conversion). General RV and U.S. Bank seek summary judgment on Plaintiffs' remaining claims against them.

## LAW AND ANALYSIS

I. Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is

a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

 II.   Magnuson-Moss Warranty Act

General RV and U.S. Bank ("Defendants") argue that the "as is" and other disclaimers in the purchase agreement preclude Plaintiffs' claims under the Magnuson-Moss Warranty Act for breach of express or implied warranty. The act provides a cause of action for a warrantor's failure to comply with the terms of a "written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). The act limits warranty disclaimers:

> No supplier may disclaim or modify . . . any implied warranty to a consumer with respect to such consumer if such supplier makes any written warranty to the consumer with respect to such consumer product. . . .
>
> * * *
>
> A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law.

15 U.S.C. § 2308(a), (c).

Here, the manufacturer, Forest River, provided a warranty for the Crossfit. The dealer, General RV, expressly disclaimed any warranty in

- 7 -

several different places. Directly above Plaintiffs' signatures, the purchase agreement provides (in red ink) that

> BY SIGNING BELOW, PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS THE TERMS OF THIS AGREEMENT, INCLUDING THOSE PRINTED ON THE REVERSE SIDE, WHICH INCLUDE AN "AS IS" CLAUSE. . . .

Doc. 20-1, Ex. 4. The reverse side of the purchase agreement contains the following language:

> PURCHASER UNDERSTANDS THAT THERE MAY BE WRITTEN WARRANTIES COVERING THIS RV, BUT THAT THESE WARRANTIES ARE OFFERED BY THE MANUFACTURER OF THE RV, ITS COMPONENTS AND/OR ITS APPLIANCES. THESE WARRANTIES HAVE BEEN PROVIDED TO PURCHASER, AND PURCHASER HAS READ AND UNDERSTANDS THESE WARRANTIES. PURCHASER UNDERSTANDS THAT DEALER OFFERS NO WARRANTIES, EXPRESS OR IMPLIED, ON THIS RV. THIS RV IS SOLD "AS IS" BY DEALER, AND DEALER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. . . . Also, since Dealer provides no warranties from Dealer, any written warranty from a manufacturer of the vehicle or its components is Purchaser's sole and exclusive remedy for any problem that Purchaser may have with the vehicle or any appliance or component.

*Id. See also* Doc. 20-1, Ex. 5 ("I understand that I am purchasing this vehicle "AS IS" from General RV."); Doc. 20-1, Ex.7 ("General RV does not issue any warranties whatsoever express or implied."). George Dolores also signed a form acknowledging that he "was presented with a fully completed Purchase Agreement and its terms and contents were explained" to him. Doc. 20-1, Ex. 8. He further acknowledged that he was "allowed the necessary and requested time to review" the agreement, that his questions about the documents were answered, and he understood the terms and conditions of the purchase agreement. *Id.*

Plaintiffs contend that the warranty disclaimer is ineffective under the Magnuson-Moss Warranty Act because under 15 U.S.C. § 2308(a), General RV may not disclaim an implied warranty when it has also provided an express written warranty. As the purchase agreement clearly and unambiguously states, however, General RV provided no written warranty for the Crossfit. Rather, the warranty, if any, was provided by the manufacturer. Accordingly, General RV's disclaimer does not run afoul of § 2308(a) and is effective.[1] *See Chaudoin v. Thor Motor Coach Inc.*, 2017

---

[1] Plaintiffs also suggest in their brief that the warranty disclaimer is ineffective under M.C.L. § 440.2316. This claim was not pleaded in their complaint. In any event, this claim is also without merit. *See id.* ("as is" clause, if conspicuous and in writing, is sufficient to disclaim implied warranties).

WL 3485803 at *13-15 (E.D. Mich. Aug. 15, 2017) (finding General RV's disclaimer effective and dismissing Magnuson-Moss claim because General RV did not make a written warranty to the plaintiff). The court will grant summary judgment in favor of Defendants on Plaintiffs' Magnuson-Moss claim.

III. <u>Misrepresentation Claims</u>

Plaintiffs claim that Defendants misrepresented that they would be purchasing the Crossfit for $87,000, they would receive a $55,000 trade-in credit, and that the vehicle was safe and fit for its intended purpose. Plaintiffs further claim that General RV falsely stated that they needed to purchase an extended service contract to protect them against theft. Defendants assert that Plaintiffs' misrepresentation claims are precluded by the following language in the purchase agreement:

> THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER. NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATION BEYOND THIS AGREEMENT. NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN HAVE BEEN MADE, WHICH ARE NOT CONTAINED ON THIS DOCUMENT. PURCHASER HAS NOT RELIED ON ANYTHING NOT WRITTEN INTO THIS PURCHASE AGREEMENT SUCH THAT NOTHING ELSE IS THE BASIS OF THE BARGAIN OR IS ENFORCEABLE AGAINST GENERAL RV, EVEN IF ALLEGED TO BE A MISREPRESENTATION.

Doc. 20-1, Ex. 4.

To establish a claim for misrepresentation, Plaintiffs must demonstrate, among other elements, that they acted in reliance upon the misrepresentation. *See Roberts v. Saffell*, 280 Mich. App. 397, 403, *aff'd* 483 Mich. 1089 (2009) (elements of misrepresentation claim). In the purchase agreement, however, Plaintiffs agreed that they did not rely upon any oral representations made by General RV. Accordingly, Plaintiffs cannot establish an essential element of their misrepresentation claims. *See Federated Capital Servs. v. Dextours, Inc.*, 2002 WL 868273 at *1 (Mich. App. Apr. 26, 2002) (no reliance when party "expressly disclaimed any reliance on any statements or representations" in contract). The court will grant summary judgment in favor of Defendants on these claims.

IV.   Motor Vehicle Sales Finance Act Claim

The Motor Vehicle Sales Finance Act ("MVSFA"), M.C.L. § 492.101, *et seq.* outlines requirements for installment sale contracts. *See generally King v. Ford Motor Credit Co.*, 257 Mich. App. 303, 316 (2003) (the act's "predominant purpose is to set forth licensing and procedural requirements governing a motor vehicle installment sale"). Relevant here, § 492.131(a) sets forth certain prohibited charges, stating that a licensee under the act shall not charge fees "in excess of the cost of insurance premiums, other

costs, the finance charges, refinance charges, default charges, recording and satisfaction fees, court costs, attorney's fees, and expenses of retaking, repairing, and storing a repossessed motor vehicle which are authorized by this act." *Id.* Courts have held that § 492.131(d) of the MVSFA provides a limited cause of action against a party who collects prohibited charges in violation of M.C.L. § 492.131(a). *Lozada v. Dale Baker Oldsmobile, Inc.*, 136 F. Supp.2d 719 (W.D. Mich. 2001); *Calkins v. Midland Funding NCC-2 Corp.*, 412 F. Supp.2d 699 (W.D. Mich. 2006) (Cleland, J.).

Defendants argue that Plaintiffs have not pleaded a violation of M.C.L. § 492.131(a), and therefore their MVSFA claim fails. Plaintiffs appear to concede that their complaint does not state a claim under § 492.131(a). Doc. 26 at PageID 328. Plaintiffs contend that they should be allowed to amend their complaint to allege that the alleged "upcharge added to the advertised price of the Crossfit is disallowed" under § 492.131(a). Plaintiffs do not, however, provide legal authority for the proposition that the alleged increase in the sale price, as expressly reflected in the purchase agreement, violates § 492.131(a). The MVSFA is a regulatory statute concerned with hidden fees, not the sale price of the vehicle. *King*, 275 Mich. App. at 322 ("The plain language of the statute in

no way alters the profit margin the dealership may receive on the sale of a motor vehicle and any additions the purchaser selects."). Providing no authority to the contrary, Plaintiffs have failed to properly plead their MVSFA claim; further, Plaintiffs have not demonstrated that they can correct this defect. Thus, an amendment to the complaint would be futile. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."). Accordingly, summary judgment in favor of Defendants is warranted.

V. Motor Vehicle Installment Sales Contract Act

Plaintiff also alleges a violation of the Michigan Motor Vehicle Installment Sales Contract Act, which sets forth requirements for written retail installment contracts. M.C.L. § 566.302. These requirements include (1) the cash price of the motor vehicle; (2) the amount of the buyer's down payment; (3) unpaid balance; (4) the cost of any insurance; (5) the principal balance; (6) the amount of the finance charge; and (7) the time balance and number of installment payments required. *Id.* If a written instrument does not comply with this provision, the buyer is not liable for the finance charge. *Id.*

Defendants contend that the Motor Vehicle Installment Sales Contract Act does not apply to the installment contract between Plaintiffs and U.S. Bank because that agreement states that it is governed by Ohio law. Doc. 20-1, Ex. 10. The agreement provides: "THIS NOTE IS MADE AND ENTERED INTO IN OHIO, AND YOU AGREE THAT IT IS GOVERNED BY THE LAWS OF THE STATE OF THE OHIO AND APPLICABLE FEDERAL LAW." *Id.* Plaintiffs argue that Michigan law applies because the purchase agreement between General RV and Plaintiffs contains a Michigan choice of law clause. Plaintiff has not established that the purchase agreement is an installment contract governed by M.C.L. § 566.302, however. The installment contract is the agreement between Plaintiffs and U.S. Bank, which provides that it is governed by Ohio law.

Moreover, Defendants argue that even if Michigan law applies, the installment contract substantially complies with § 566.302, which is what the statute requires. *Id.* (seller may not recover finance charges on instrument "which does not substantially comply with the requirements of this section"). The installment contract does substantially comply with § 566.302 in that it discloses the principal balance, amount financed, the finance charge, the number of payments, and the amount of those

payments. Doc. 20-1, Ex. 10. Plaintiffs do not argue otherwise. Accordingly, for these reasons, the court will grant summary judgment in favor of Defendants on this claim.

VI. Summary

The court is sympathetic to Plaintiffs' predicament and their allegations of sharp sales practices. However, the essence of Plaintiffs' claims is that they did not initially read the documents that they signed. "[U]nder Michigan law, a party who signs a contract . . . ordinarily is presumed to have read, understood and assented to its terms." *Logan v. MGM Grand Detroit Casino*, 299 F. Supp. 3d 874, 877 (E.D. Mich. 2018); *see also Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 460 Mich. 558, 567-68 (1999) ("[O]ne who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms."). Under the circumstances, Plaintiffs may not recover against General RV or U.S. Bank.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion for summary judgment (Doc. 20) is GRANTED.

Dated: June 25, 2019

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 25, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk